We begin with our first case, Barnett v. United States. Mr. Callaway, when you're ready. Good morning, Your Honor. May it please the Court. Jordan Callaway along with Brooke O'Shea and Chris McCool on behalf of the appellant Penny Barnett. This case called for the District Court to compare a mariner's navigation mistakes against the government's maintenance errors and a negligence action arising from a fatal elision between the mariner's boat and the defendant's dike. This appeal arises not from the District Court's factual findings but from its initial ruling setting aside as immune the government's failures as it related to inspecting and repairing the dike's lighting system. That meant that the District Court refused to the government's admission that the dike was dangerous and that its light system had not been inspected for more than four years before this elision. Since the government's duty was not discretionary and did not implicate protected policy judgments, the District Court erred as a matter of law from removing the government's negligence from the fault allocation process. Accordingly, the District Court's immunity ruling should be reversed and this matter remanded for a genuine analysis of all the factors that contributed to Mr. Barnett's death. I'd like to start, your honors, with the discretionary function exception. Looking at the District Court's ruling, at its initial step, what the District Court decided to do is remove most of the negligence evidence presented by Ms. Barnett at trial from the court's analysis of the breach and causation elements of her negligence claim, finding them all to be covered by the more than just a burned-out bulb and what we're calling amber light West. It was also about failures as it related to the inspection, repair, and servicing of all three of those amber lights, in addition to the green lights. That's light 49A, which was attached to the edge of the dike, and light 49, which was attached to a buoy near the dike. And we think, your honor, that neither prong of the discretionary function exception supported excluding those pieces of evidence, that negligence, from the consideration of fault in this case. And so the first element of the discretionary function exception simply asked, was this a discretionary decision? Was this a matter that related to discretion or judgment or that sort of a consideration? And what the witnesses from the government testified at trial is that they had mandatory duties to inspect and repair the lights that were attached to this dike. And I can provide some specific examples here. The Coast Guard... Why isn't this a straightforward, factual matter dealing with the question of causation? I mean, I'm just not sure it's viable to make something complicated out of something that's rather straightforward and simple. Why isn't it just a question of whether the government's breach of a duty or whatever caused the accident? I think that is the core question here, but... Why isn't causation a question of fact? Well, causation would be a question of fact if all of the factors, if the discretionary function exception hadn't taken off the table things that should have been considered as part of the causation analysis. That's the core argument here, is that causation here, under the reliable transfer opinion from the Supreme Court, is that we have pure comparative fault here, which means we look at each side and say, what did this side do that contributed? What did this side do that contributed? And what I'm saying is that what the district court did in this case was take most of the negligence argued at trial and presented through evidence at trial off the table. And so when you get to that weighing of the fault of both sides, this side doesn't have everything that it should on the table. And that's the core. I get the argument that this discretionary function exception, in your view, took away some negligence issues, but I'll come back to that later, but even if everything you say is outside that rule is correct, would it be legal error for the district court to say that going full throttle outside of the green lights was the cause of this accident, the sole cause, sole proximate cause? I think so, your honor, because what the district court did here is to say that Mr. Barnett's negligence was a superseding cause, and we believe that that was a misapplication of the superseding cause doctrine. Let's assume that I think that's probably true, but it also, the I'm not sure why that's wrong. Because, your honor, well, here's the way the other courts have dealt with this. The other courts have said, well, if there's a discretionary function exception mistake, right, if there is evidence that should have been considered not a discretionary issue and you didn't include it, then the right move is to remand. I will confess I was a little surprised by this sort of very strong start of discretionary function exception because it didn't super well match onto my recollection of the briefs. So I pulled up your opening brief, and this is what I see on page 13. It says, as the district court acknowledged, whether the government adequately maintained the lights does not qualify as a DFE. Fair enough. And this is the next sentence of the brief, the part that just threw me off. Therefore, the flaws in the lights and the perceptibility of the lights are also beyond the DFE's reach? That strikes me as a gigantic logical leap that is not really supported. So let me put a way to ask you this. This court, my understanding, has said that decisions about how bright lights should be, how often they should flash, and where they should be located are all DFE's, right? That's bomb. So I don't really understand how questions about the perceptibility and flaws in the lights aren't shielded by the DFE. And when I look at your brief, I just see a single conclusory sentence asserting that they are. Let me explain to our argument there. The district court did acknowledge that there is a duty under Regulation 33 CFR 6221 subsection D that the obligation of the Coast Guard is to inform manners of discrepancies and to correct those within a reasonable time period. And the question becomes, well, what is a discrepancy? Well, discrepancy is defined in the ATON manual as being any light that does not function as prescribed. Now that means that a discrepancy is way more than just a burned-out light. It can include issues with the flash sequence. In fact, there's testimony from the... Issues with, sorry, issues with the flash sequence not flashing the way they're supposed to flash? Because it can't be issues with the Coast Guard made a misjudgment about how frequently they should flash. Because that, but like, so you're saying the Coast Guard said they should flash every two seconds, but in fact they're only flashing every 20? Is that the kind of discrepancy you're talking about? The type of discrepancy we're talking about here is that the ATON manual says for lights like light 49A, that the quick flash is what should be used. But that's, that's, yeah, I think of this a little bit like, in a product liability world, there's manufacturing defects and there's design defects. And as I read the way this law works is that, they don't use these words, but it's almost like manufacturing defects are covered. You know, if you design something, if the specs say this and it's not working the specs, you got a claim. And we also have something that says it can't be materially misleading or something like that. But, but, but generally it takes, it seems to me, you know, should have you designed it better? Should you have had more flashes? Should you have brighter lights? Things that might in the normal tort world be kind of design claims off the table under the discretionary function exception. I, I don't think that's how the testimony from the... But it doesn't matter what the testimony is if that's what the law is. Well, but all that the law says is, well, the two prongs. First is, is it discretionary? And then second, getting into it, does it implicate a protected policy judgment? And that's the other part that I think the court needs to grapple with here. It is this, do these issues relate to a protected policy judgment? I don't believe that they do under the case law that we cited. The most, I think, analogous case it is, is a Centenario case from the Third Circuit, which found that the National Park System failure to maintain the lights in their parking lot was not a protected policy judgment. That, and the reason why is because this was a garden variety torts that any, any private person who had their property... Normally lawyers come and they're on the losing side of a summary judgment motion, and what they're seeking is a trial before a trier of fact. This comes up in a slightly different way because you've already had your, you've already had your trial before your trier of fact. And, you know, I realize that losing parties in a trial always try to convert questions of fact into questions of law, but I would say a good 85-90% of the cases of this nature would come up and say, well, there's a disputed issue, this should go before a jury, but this one did. This one went before the bench, it was a bench trial, but given the fact that this spooled out before the bench trial, the conclusions that were reached seemed to me heavily factual in nature. The, I guess one of the things is you can look at things as a matter of contributory negligence and the, you could say the decedent shouldn't have relied solely on lights to navigate, he had access to a GPS, he had a crewmate where who should have posted as a lookout, he should have proceeded at a slower speed because it's nighttime. But these questions which go to contributory negligence also seem to me to go to the question of causation, and that is ultimately did a combination of the government's duty to repair and the lighting and everything, plus the defendant's lapses, the ultimate question is combined did those two things simply negate the proposition that a breach of any kind of duty caused the accident? That was what the whole going back to the trial court in some ways would ask him to redo what he'd already done. Your Honor, here's why I disagree with that. The issue that we're raising here is the application of discretionary function exception. That's the primary issue. What this court said in indemnity insurance company is the application of discretionary function exception is a legal question that this court reviews de novo. And so, yes, you're right, the issue of causation was primary at trial, but our argument is by taking so much, I mean look at page 99 of the record. It may be a legal question to the extent of whether the discretionary function exception is at play, but I don't think we need to get into that. I don't think the government has really defined its policy choices with the kind of clarity that would bring the discretionary function exception into play, but I think it's just that may be a question of law, but it seemed to me that much of the rest of it will involve the trial whose primary focus was, well, what was the cause of this mishap? And if I may, Your Honor, if that be the case, and assuming for the sake of argument what Your Honor just said, that discretionary function exception was improperly applied here, that means there is a lot more negligence on the government's part that needs to be considered, which means when you get to that causation analysis, there's a lot more that needs to be weighed. I mean, just look at how the district court started its causation analysis. The opening line of the causation section on page 109 of the record says that there is no negligent, excuse me, there is no causation for the government here because a burned-out bulb was not the proximate cause. So that's what they, that's what the court said. It said that's why we're finding no causation here. Well, if Your Honor is accepting for the sake of argument the notion that a lot more should have been on the table, then a lot more should have been considered, and frankly, for this court being a court of review rather than first view, there's really, as it relates to that, nothing for the court to review. No losing litigant ever feels they get an absolutely perfect trial, but I'm not sure that that's a question under the substantial rights doctrine and Rule 61 and the rest. The question is, did you get a fair trial? And I wonder if you didn't have, it seemed to me, have a fair shot before Judge Norton. Is it perfect? No trial ever is perfect, but was it fair? The factors that led to the accident seem to me to be brought out, and I wonder whether you've, you know, I'll put it in very simple terms, haven't you had your day in court? Not with all of the evidence, or not with all of the negligence that should have been considered being considered, and that way, no, we did not get our day in court. Assume we do take a look at the discretionary function analysis. What's your best case that that doctrine protects things other than the design, if you will, whether the lights were flashing enough, whether they were bright enough? What's your best Fourth Circuit case in that? There's not a lot of discretionary or DFE cases in the Fourth Circuit. Well, tell me your best Fourth Circuit case, and then go to your best case outside of the Fourth Circuit. Well, so the Fourth Circuit, I mean, there's discussion in Magno, which is a discretionary function case. I mean, which which one? The Magno case, which there's a lot of discussion, which we think is very distinguishable, both on the facts and the law here. I mean, I would point to the U.S. Supreme Court's opinion when they talk in Gobbert, and they just talk about the type of cases that is really designed to deal with. Discretionary functioning section is designed to deal with cases where there is a direct and specific link between the conduct in question and an overarching policy objective. For example, in the Dale Height case, well, was the... Let me keep you at the Fourth Circuit, and then I'll let you talk about that one. I don't want, I don't mean to cut you off. No, no problem. But, you know, we say in Faust that the, that their claims of inadequate warning are not actionable. It's only actionable if the lighting system or warning system induces reliance on misleading navigational aids or aids that do not work, that are not functioning, not that could be better or brighter, but that don't work. How do you get around, how does that language not support what Judge Norton did? I think what the difference there is that the, the duty theory on which that language is based is the Indian towing doing theory. It's what? The Indian towing doing theory in the Supreme Court's the Indian towing. Our claim here is not based solely on Indian towing. That is an undertaking theory, that you undertook this duty so you have a duty to do it in a certain way, and the Fourth Circuit has interpreted that and say, okay, that's only limited to where you induce reliance on misleading aids. But the other theory we have here is based on the regulation which the District Court acknowledged imposed duties on them to act. So that 33 CFR 6221 subsection G. And so that's a regulatory duty. And the notion that that duty is only limited to reliance interest, there's no support in the case law for that. And so the language that you're reading there and quoting from there applies to only one portion of the duty analysis that's at stake here. And we're talking about a separate sort of prong of this now. It seems like you're, you're saying it's separate, but if you carry out what you say is separate, I'm wondering if that doesn't in effect nullify what we've said in Faust. I don't think so, because I don't think the regulation that the District Court here found was requiring the Coast Guard to do certain things was that issue in Faust, was that issue at Magno, and which we're really looking at the Indian towing undertaking theory. And so that's, you know, that's a common law analysis if you undertake a duty, what is the scope of the duty that you've undertaken, as opposed to, well, the regulations say this is something you must do. It's really different than the common law. I mean, in normal tort law, you know, the kind of Good Samaritan sort of law would say, like you just said, if you undertake a duty, you have a duty to do it reasonably. And that might include design sort of things. This is actually more narrow. It's that if you undertake a duty, you must, you know, if you undertake a duty to include navigational aides, you're really only liable if they don't work. Well, then the question becomes, what does it mean to not work? And that means functions to serve their function, the function being warning people that you're approaching the dive. So just the notion that it's either on or off is not necessarily fully encompassing the duty of... I get your point. I mean, I think your point is if you have a light that's dim, it's effectively not working. If you have a light that's not blinking as fast as it could be, it's not doing the job that is good as well as it could. I understand that point, and if we were in, you know, if we were in negligence law in South Carolina, you know, or most states, you'd have a good argument there, but we're confined by, you know, this maritime restrictions that seem to just look at the wall differently. And the only point, and I know I'm way over time, so may I answer before, and then I will sit down. Okay, and that would be two things. Well, the primary one being that I think instead of, that the language you're talking about really is limited to the Indian towing situation, and we're not simply arguing for an undertaking duty. And I think that's the key distinction. And so we're not just saying that there's an undertaking duty, and therefore you're confined by the language of Magno and Faust and those sorts of cases. But if the duty arises from a regulation, then confining it in that way I don't think is consistent or required, certainly, by the Fourth Circuit case law. And I will address any other issues on reply. Mr. Murphy, we'd be pleased to hear from you. Thank you, Your Honor. Your Honor, you suggested that this case is really about causation, because that's what the District Court found, that there was no causation here, because in the plaintiff's words, Mr. Bylatt's navigation mistakes were the sole cause of the accident. And I'd just like to put you on the evidence that supports the District Court's finding, because I agree the law in this circuit is very clear, and the court simply had to trial. It's not as a discretionary function, like excluded or open. What I'm suggesting is that you have the elements of a tort, or you have a duty, and you have a breach of the duty, and even if we assume that the government had a And even if we assume that there was a breach of that duty, there still has to be causation in order for liability to attach. And then it seemed to me that treating causation as a question of fact, which I always thought it kind of was, is a discretionary function. I think that's absolutely right. Discretionary function exception. I just wasn't, I wasn't persuaded that the government really indicated the policy choices that it had to make, or that it had the discretion to make. Why not just assume that there was a duty and a breach of the duty, and then just address whether the District Court's finding on causation was clearly erroneous. Well, Your Honor, if I just, I would just like to address that very question now, because one of the arguments that plaintiff makes is that the lights didn't work properly, that it wasn't just navigation mistakes, that there was some negligence by the government, and that one of the things they say is that there was no evidence to support the court's finding that the dike was well lit. There was evidence at pages 446 of your joint appendix that exact phrases used. It's repeated at 451 to 52. There was an expert in maritime and navigational safety who told the court, my opinion is that the dike was properly lit, and that's at page 566 of your joint appendix. More importantly, though, is what the District Court really understood in this. You speak up for me. Yes. Even more importantly, what the District Court really understood after this trial is that the yellow lights on the dike were not the critical lights that had to be working for Mr. Barnett to navigate. The key ones were 49 and 49 alpha. So there was testimony that the amber lights were not used to navigate. That's Mr. Murphy at Joint Appendix 1062. Council and District Court kept trying to describe them as quote-unquote danger lights. But they weren't used to navigate at all. They're not used to navigate. They just marked the dam. So the ones that are used to navigate are the green ones and the red ones. But you're saying that they weren't used to navigate. Correct. Correct. So that's when the District Court said that there's no causal connection. One of the reasons is that these aren't navigation lights. And the problem for Mr. Barnett was that he was supposed to be navigating up the channel, and he came out of the channel. If you look at the chart that's on page 1 of our addendum to our brief, you can see the channel goes like this, and the dike is really pretty far away. You have to leave the channel by a long way. Let's start with the discretionary function exception. Don't we have to answer the discretionary function exception? Because if the District Court was wrong in concluding that certain alleged acts of negligence were not discretionary functions and fell within the DFE, then this trial took place on a materially incomplete record because the District Court declined to consider evidence it should have considered, right? No, Your Honor, because... Well, the District Court, I mean, again, whether the District Court judge was right or wrong to do it, the District Court said there's a whole bunch of things the plaintiff alleges were breaches of the duty. Those all fall within the DFE, so I'm taking those all off the table as a basis on which the plaintiff can win, and it's a legal error to decide a case based on a materially incomplete record. Again, I know you don't think he was... I know you don't think the District Court erred in doing that, but I don't see how we can assume for the sake of argument the District Court erred in doing that, because if the District Court erred in doing that, I don't understand how this case wasn't based on a materially incomplete record. So, Your Honor, first of all, the District Court got it absolutely right. I'm sure that's your primary position. Right, but secondly, I think maybe anticipating this question because it's kind of a difficult record where you have to understand where the lights were and what the navigation is and all of that, the District Court did everyone a favor and said, you know, let's say I end up having to, you know, broaden the scope a little bit. Let's say I'm wrong. Let's say that the light's not properly maintained. That's open to question, the court said, even though, in fact, the facts were, you know, pretty clear. And then it did the superseding cause analysis. Well, now you run right into my second problem, which is I do not, with all respect to the District Court, understand how in the world this is a superseding cause. Okay. I think, well, like, let me, and this may not matter because you may get there, I totally understand the argument that the the decedent's own negligence was the sole approximate cause. Again, I understand they think that the plaintiffs think that's wrong, but like conceptually I understand that. But I don't understand how this would be a superseding or an intervening cause. This strikes me as simultaneous, like non-superseding, non-intervening, that all of the causation happens at once, which to me, this strikes me as very different, for example, than SOFAC, where as the court lays out the facts in SOFAC, like, the first bad thing happens, and then the court's opinion makes a very clear statement, and at that point, the first bad thing is over, it's done. And then the mariner makes an additional bad decision that is totally unrelated to the thing that the defendant did, and that's what ultimately got him in trouble. This isn't that case. All of it's happening at the same time. Their argument is that the dike is inadequately lit. Your argument is that he's navigating in the wrong place. This just does not strike me as an intervening or superseding cause. So, Your Honor, I think the point was to, so I think one way to think about it is the government's supposed error is not keeping these lights properly maintained. As I say, that's wrong on the facts, there's record evidence, and they're also not used for navigation. But the other thing is, it was completely unexpected and unforeseeable that somebody going up this channel. That may be. That's a, I don't have a duty to do something that's unforeseeable. That's not superseding cause. Superseding cause is when someone has a duty, someone has breached the duty, and the question is, you know, who caused it? And I think there's a, you know, again, I think you could make two arguments. You could say the district court's discretionary function analysis was right, and, you know, with that, you know, the decision was correct. I think you could also say, under these facts, if you go outside the channel at full throttle to lights that, you know, not using your GPS system, that you're the sole cause. But that, and give the point of the benefit of all the things they say were wrong on the part of the government, you say it's, they still didn't cause this under these facts. Right, I think that's what the court really meant. That may be what it meant, but that's. And that's what it's, importantly, it's also that's what the record shows. So there was a. He did say sole proximate cause. He did. So I think that's helpful. And importantly, what I what I want your Honor to know is that there was plenty of record evidence for that. So we're talking about assuming arguendo and what we can and what we cannot assume arguendo. But a court of appeals, at the end of the day, can affirm the district court on any ground. It doesn't, it doesn't have to be on the theory that the district court announced. The question is, is there an alternative ground to affirm? And many, many times we've, we have found that there were, may have been errors in the rationale of the district court, but we said, well, okay, fine. But at the end of the day, there's an alternative reason to affirm. And all I'm suggesting is that the alternative reason goes back to torts at its simplest form, which is you have a duty, you have a breach of the duty, the breach of the duty must have caused the accident. And when you look at this record as a whole, that seems to me to be a fair alternative ground. That sounds perfectly right, Your Honor. And I just, just like to make sure that Your Honors have citations to the record evidence that supports the district court's causation holding, because that's what plaintiffs are saying is missing, or at least in their reply brief. So there was an expert on, on maritime safety, and he told the district court, talking about the amber lights and, and why the, the amber lights weren't a big factor. He said, when you have a fixed light, such as 49 alpha, that's bright and can be seen for four miles, this is the one at the end of the peer. These amber lights, I don't object to them. I think they're nice to have, but that's not what you're relying on. You're not formally utilizing them. You can, you can say, I'm willing to say for purposes of argument, the government here may have screwed up. I don't know. I'm not sure. We might have said, oh, the district court screwed up the rationale. I don't know. I'm not sure. But what wasn't screwed up was the compilation of a record, and a complete and exhaustive record, that indicates that the proximate cause was a combination of factors. One, the placement of the lights, which was not at a critical point. The district court said, did that. The absence of a lookout. He was going too fast for nighttime. There are a whole host of factors. And at the end of the day, sometimes things actually, even when great lawyers are involved, at the And you go back, I guess it may have been not on the first day, but it may have been on the second or third day in law school that I heard that the basic elements of torts were duty, breach, and the third element, which is causation. I think it was the third day of law school that I learned that. And that seems to me to be relevant. You're absolutely right, Your Honor. I'd just like to point out the previous thing that I read was at page 579 of the joint appendix. And to Your Honor's point, the district court did find that Mr. Burnett, he left the safety of the channel. It was inexplicable, because he'd navigated the channel hundreds of times. He knew that Dyke was there. He wasn't using basic prudent mariner skills. And there's testimonies to support that, again, from the navigational expert. He says, I find it hard to understand how on a clear night, with lights burning bright, with light 49 and 49 alpha, with a nominal range of four nautical miles, how you can drive right into a dyke like that. If you have any understanding or concept of buoy systems, or safe navigations, or seamanship, how you're running at a high rate of speed at night, I find unclear. And that's what the expert told the district court. We also know that Mr. Burnett was not using his chart plotter, which is, that would have told him at least where he was in the channel, and he wouldn't have, like, zoomed out at this unexpected place to go towards the dyke. He had no lookout posted. He wasn't going at a safe speed. He was going fast enough that the boat was bouncing on the water, and he couldn't see. That was at page 92 of the joint appendix. But mostly, most importantly, the critical navigational error, which the district court found, was he came out of the channel, he passed the green lights on his right, and everybody agreed that if he did that, you were going to T-burn the dyke. That's at page 94 of the joint appendix, and the expert also testified at joint appendix 563-4. If he was in doubt about where he was, he could have slowed down and looked for the navigational lights and made sure that he'd stayed in the channel. He could have used the range lights. So you are absolutely correct, Judge Wilkinson. The district court looked at all these things and concluded, just as a factual matter, pretty much regardless of, you know, did a sloppy job here. I thought... It did not. It did an excellent job. It did a conscientious job. Judge Norton gave the lawyer a chance to make his case. He explained what he's doing, why he was doing it. But the question of Civil Procedure Rule 61 indicates that we had to review these things, and we're going to have to ask at the end of the day whether substantial rights were infringed or disregarded. And I don't think that anyone was shortchanged here. You want to make sure that the legal process gave somebody a fair shot, and he had a fair shot. I think that's exactly right, and that, you know, that discretionary function, you know, didn't wipe out their case completely. The court had a trial. It heard all the facts. It concluded, based on the factors that we've talked about, that Mr. Barnett unfortunately, like, came outside the channel and had a fatal accident, and it wasn't the government's fault. And as the court said, it's tragic. Everybody agrees that it's a tragedy, but it's not the government's causing. You guys have any questions? Thank you. Thank you, Your Honors. I wanted to address a few things here. First, Your Honor, I don't think it's simply that the court can just simply say, well, you got a fair shot. If, assuming for the sake of the court's argument, as you have this morning, that the discretionary function exception was improperly applied here, that means that negligence evidence that should have been considered for the comparative fault analysis, for the causation analysis Your Honor keeps pointing to, was not considered. We did not get our fair shot with all the evidence that should have been considered on causation considered for causation. Okay, so let's say that I think that the most defensible way of getting where the district court got is sole proximate cause. Could you please identify a specific piece of evidence that was excluded that you think would bear on the question of sole proximate cause? Okay, so that would be, for example, the acknowledgment that they had a duty to inspect and they hadn't inspect in four years. And so they had a duty to look to see if there are problems here and they didn't do it. Wait, but these are the lights that the district court said, fine, I'll assume maybe they're out, but that doesn't matter because that's not what caused this accident. How does that help? Because it shows they had, well, there was plenty of testimony to suggest that those lights were not visible that night. The district court said that's not the part of the dyke you ran into, so it doesn't, like, whether that light is out or not, whether or not they failed to inspect or not, whether or not it was super duper duper negligent to not inspect those lights, none of that matters because that allegedly burned out light isn't anywhere close to where he ran into the dyke. And just factually, but that that's one light. Okay, I know, but that. Yeah, so we're talking about the other two lights, the other two amber lights were not perceivable either. But those are the lights the district court found were on. On. So again, maybe they were negligent at not checking those lights more often and maybe that was super super breach of duty. But if the lights were on, who cares that they didn't check them? I will say up front, Your Honor, I think this is a question the district court needs to answer because otherwise this court is stepping into the role of fact finder because you're completing the record that the district court didn't complete. No, I'm not. The district court, as I read the district court, what he essentially said is maybe some lights weren't maintained, maybe some lights were on or weren't on, but none of those lights are anywhere close to where he ran into the dyke at a place where the lights were on. The district court said all of those things. And so it seems to me that in order to explain how any of these alleged errors would affect the proximate cause holding, you have to attack, like explain how evidence the district court excluded, in your view improperly, would have called into question that conclusion. Well, I think what the district court actually said is because amber light West was not out or was out, that was not a causation. That was, that was the district court's conclusion. It didn't consider anything else about any of the other lights. Its focus was solely on amber light West. The district court said that this was the least important light of all the lights that were out there and that came into the, that might have implicated the government's duty to maintain them. The district court said this is the least important one and that the reason is that it is the closest to shore and it is not going to mislead a mishap in the middle of a channel or what have you. Now, you know, that goes very directly to the question of causation. If it had been the most important light, maybe the district court might have reached a different conclusion. But he said this is very, this is peripheral to the entire navigational course that was pursued. Now, that's only one of the factors that the district court pointed to. But how can all this be clearly erroneous? I don't understand. Because it's not a clearly erroneous standard for discretionary function exception, which is the primary issue here. You can't get to the causation analysis without saying, first, did the take into account all of the evidence of the government's negligence? And the district court didn't do that here. What else besides not inspecting, duty to inspect and not inspecting, do you say was excluded? For example, look at page, I would direct the court to page 1303 of the record. This is testimony from Coast Guard Aid to Navigation Specialist, Mr. Merrill, who testified that the lights need to be modified as the environment around them changes. And he specifically testified that there is an aid to navigation servicing unit that's required to go out in patrol looking for these issues. And there's also testimony from Mr. Kiefauer and Hondred on similar duties to both inspect and to deal with these issues. And I would also note that, I mean, when we're talking about here, does any of this matter? Would any of this affect the analysis as it relates to causation? I would point the court, for example, to page 1305 of the record, where the testimony there is that, look, when it comes to all of these issues, changing flash sequences, all of these things, changing brightness level of these lights, it's like flicking a button on a remote control. It's no different than you and I changing the channel we're watching football on Saturday. That's how easy this would have been for them. That's how easy it would have been to change this, to make this easier, make this better for people, for a place where there have been multiple people who have died at this dike. A contractor for the Coast Guard itself has hit this dike. There have been multiple fatal elisions at this dike over a period of three or four years preceding this incident. That was documented in a Coast Guard report. Thank you. Thank you. Thank you. Let me ask my co-panelists if they have further questions. I do not. We're fine, thank you. Thank you, your honor. We will come down and we will re-counsel and move into our next case.
judges: J. Harvie Wilkinson III, A. Marvin Quattlebaum Jr., Toby J. Heytens